**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SAMUEL WALTERS,

                        Plaintiff,

    v.                                    No. 09-CV-1222
                                                  (LEK/DRH)

C.O. GARDNER and S. HANNA,

                        Defendants.

---

**APPEARANCES:**                          **OF COUNSEL:**

SAMUEL WALTERS
Plaintiff Pro Se
05-A-4940
Fishkill Correctional Facility
Post Office Box 1245
Beacon, New York 12508

HON. ERIC T. SCHNEIDERMAN          ROGER W. KINSEY, ESQ.
Attorney General for the                  Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Samuel Walters ("Walters"), an inmate in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, two DOCCS employees,[2] violated

---

    [1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

    [2] Three other defendants were previously terminated from this action. See Dkt. Entry dated Nov. 7, 2011; Dkt. No. 28.

his constitutional rights under the Eighth Amendment.  Third Am. Compl. (Dkt. No. 49).[3]  Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Dkt. No. 45.  Walters opposes the motion.  Dkt. Nos. 47, 54.  For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

The facts are related herein in the light most favorable to Walters as the non-moving party.  See subsection II(A) infra.  The events in question occurred during Walter's incarceration at Bare Hill Correctional Facility ("Bare Hill").

On February 5, 2009, at approximately 9:23 a.m., Walters was involved in an altercation with another inmate, Mark Mendez ("Mendez"), in the housing unit bathroom.  Third Am. Compl. (II)(D).  As a result of the altercation, Walters sustained an injury to his left eye which eventually required the eye to be removed and replaced with a prosthetic.  Id. (II)(D) & (III).  On that morning, defendant Hanna was on duty supervising Walter's housing unit.  Hanna Decl. (Dkt. No. 45-3) ¶ 6.  Defendant Gardner was on duty that morning, but was not supervising Walter's housing unit and was located on a different floor when the incident occurred.  Gardner Decl. (Dkt. No. 45-5) ¶¶ 6, 8.

---

[3]  Walters filed his original complaint on November 2, 2009.  Dkt. No. 1.  On May 5, 2010, Walters filed an amended complaint.  Dkt. No. 16.  On July 9, 2010, Walters filed a second amended complaint.  Dkt. No. 21.  On April 13, 2011, Walters filed a third amended complaint, dismissing defendant Powell from the case and naming defendant Hanna instead.  Dkt. No. 41.  The defendants then filed the present motion, addressing all claims against all defendants, including Hanna.  Defs. Memorandum of Law (Dkt. No. 45-1) at 2, n.1; see also Dkt. No. 52 (letter motion from defendants requesting that Hanna joint the pending motion for summary judgment).  The motion for the third amended complaint was granted, noting that the second and third complaints were substantially the same with the exception of naming Hanna as a defendant.  Dkt. No. 48.

That morning, Hanna was responsible for fifty-nine inmates who were beginning their day by attending morning activities, such as lounging in the common area, going to vocational classes, disciplinary hearings, or meals, and attending other scheduled appointments.  Hanna Decl. ¶ 7.  Defendants neither witnessed nor had any prior knowledge of any altercations between Walters and other inmates or knew of any threat of an altercation occurring on that day.  Hanna Decl. ¶¶ 8-9; Dkt. No. 45-6 at 37; Gardner Decl. ¶ 18.  Walters also never informed staff that he was in danger, required protective custody, or requested to be moved.  Hanna Decl. ¶ 16; Powell Decl. (Dkt. No. 45-4) ¶ 13.  Defendants had no warning there would be a fight as there was no prior incident or notice given to them, formally or informally, that there was a conflict between Walters and any of the other inmates.  Hanna Decl. ¶¶ 17-18; Powell Decl. ¶ 11; Gardner Decl. ¶¶ 13, 19.  Moreover, the only physical contact to occur was later that day in the bathroom as no physical contact occurred in the dorm thus giving defendants no warning that an altercation might ensue.  Hanna Decl. ¶ 31.

Walters asserts that the argument began earlier that morning when Mendez entered Walter's cube to fix his bedding.  Dkt. No. 45-6 at 28, 33.  Walters yelled at Mendez for being in his cube and Mendez left.  Id.; Third Am. Compl. (II)(D).  This same problem had occurred once prior to February 5, and Walters had notified defendant Gardner that Mendez had entered his cell without permission.  Third Am. Compl. (II)(D); Gardner Decl. ¶ 15.  Gardner has no recollection of this conversation occurring.  Gardner Decl.  ¶ 15.  Regardless, inmates were not allowed into the cubes of other inmates, but since space was limited, inmates might cross into the cube space of another inmate while making their beds.  Hanna Decl. ¶¶ 11-12; Gardner Decl. ¶¶16-17.  Walters stated that he was then

3

reprimanded for being loud by Hanna, though Hanna does not recall that occurring. Third Am. Compl. (II)(D); Hanna Decl. ¶¶ 12-13.[4]

Sometime thereafter, Walters and Mendez entered the bathroom; though it is unclear which inmate entered the bathroom first. Dkt. No. 45-6 at 28, 33. The bathroom is located down the hall from the dorm, separated from it by two doors. Hanna Decl. ¶ 19. It was impossible for Hanna to witness the inmates entering the bathroom or the altercation which ensued. Hanna Decl. ¶ 10. Walters contends that Hanna was derelict in his supervision because, if he could not view the bathroom he should have been going on patrols of the area during his shift. Dkt. No. 47 at 2. Subsequently, an altercation between Walters and Mendez occurred and Walters exited the bathroom, going directly to Hanna's desk saying "Look at what he did to me." Hanna Decl. ¶¶ 21-23; Dkt. No. 45-6 at 28, 33, 37. Hanna observed that Walters was bleeding profusely from his left eye. Hanna Decl. ¶ 24. Hanna initiated an emergency alarm and additional officers, including Gardner, responded to the scene and Walters was escorted to the infirmary. Hanna Decl ¶¶ 24, 26; Dkt. No. 45-6 at 37. Gardner personally escorted Walters to the infirmary without any further incident. Gardner Decl. ¶¶ 10-11.

The other inmates in the housing unit were lined up in the common area and checked for weapons and wounds consistent with being in an altercation. Hanna Decl. ¶ 25; Dkt.

---

[4] In the Second Amended Complaint, Walters alleged that after the initial verbal argument he had with Mendez on February 5, about entering his cube, he reported to Hanna at the front desk and apologized for being loud. Dkt. No. 21 at 1. Hanna also did not recall that occurring, but indicated that if Walters had apologized to him "then there was absolutely no notice or indication that anything was out of the ordinary, or that there was an ongoing argument." Hanna Decl. ¶ 15. These facts were omitted from the Third Amended complaint.

4

No. 45-6 at 28. Sgt. Manor determined that Mendez was the other party in the altercation. Hanna Decl. ¶ 26; Dkt. No. 45-6 at 28. Mendez denied using any weapons in the fight, instead reporting that the two had punched each other, and when the unit was searched no weapons were found. Hanna Decl. ¶ 26; Dkt. No. 45-6 at 29, 33. However, a piece of metal was found in the bathroom. Dkt. No. 45-6 at 23.

Walters was immediately transported to Alice Hyde Medical Center. Dkt. No. 45-6 at 28. Both inmates refused to sign forms to allow them to be placed in protective custody. Dkt. No. 45-6 at 29, 39. Both inmates were issued misbehavior reports. Dkt. No. 45-6 at 29. An interview of the other inmates of the housing unit was conducted as well. Dkt. No. 45-6 at 31.

### III. Discussion

Walters claims that his Eighth Amendment rights were violated when defendants failed to protect him from Mendez. Defendants seek dismissal claiming that Walters' constitutional claims are meritless and that they are entitled to qualified immunity.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v.

5

Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks dismissal or summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

**B. Eighth Amendment**

Eighth Amendment obligations also include the duty to protect prisoners from other

known harms, including violence at the hands of another inmate.  Farme v. Brennanr, 511 U.S. 825, 829 (1970); Matthews v. Armitage, 36 F. Supp. 2d 121, 124 (N.D.N.Y. 1999) (citations omitted).  "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer, 511 U.S. at 832.  Where the inmate is alleging "a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. at 834 (citing Helling v. McKinney, 509 U.S. 25, 31-32 (1993)); see also Matthews, 36 F. Supp. 2d at 124 (same).

As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test." Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted). In order to state a cognizable failure to protect claim, (1) "the inmate [must be] incarcerated under conditions imposing a substantial risk of serious harm," and (2) the prison official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Matthews, 36 F. Supp. 2d 121, 124-25 (N.D.N.Y. 1999) (citing Farmer, 511 U.S. at 834) (internal citations and quotation marks omitted).

As direct evidence of disregarding serious risks and dangers is rarely available, the subjective test requires inferences based on circumstantial evidence. Matthews, 36 F. Supp. 2d at 125.  "A prisoner [need not] demonstrate that he lodged a specific complaint that he was at risk of attack from a certain inmate . . . [only] whether [prison officials] were aware of a substantial risk of harm to [the inmate]." Id. (citations omitted).  This mayld be

7

demonstrated by showing "a substantial risk of inmate attacks [which were] 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past . . . .'" Coronado v. LeFevre, 886 F. Supp. 220, 224 (N.D.N.Y. 1995) (citing Farmer, 511 U.S. at 842).

In this case, Walters has failed to satisfy either prong of the analysis. The only evidence which was proffered was that Walters had twice complained and yelled at Mendez for entering his cell when making his bed. In evaluating Walter's initial report to Gardner, Walters' complaint did not indicate that Mendez had threatened to harm him, only that he had invaded Walter's personal space. Additionally, Walters was reprimanded by Hanna, but Walters never subsequently approached Hanna and reported that he felt threatened or discussed any history or perceived future violence. Even if these instances could be construed as threats, isolated, obtuse occurrences are insufficient to satisfy the objective prong of the test. See Murray v. Goord, 668 F. Supp. 2d 344, 358 (N.D.N.Y. 2009) (dismissing case where plaintiff Murray was stabbed after a defendant corrections officer informed plaintiff that he had been threatened by the inmate who ultimately stabbed him because the isolated threat failed to show a substantial risk of serious harm).

Moreover, these verbal disagreements portended no violence. After the first, Walters had a conversation with Gardner and after the second, Walters was allegedly admonished by Hanna. The verbal disputes did not appear to be out of the ordinary as the other inmates in the housing unit all characterized Walters as a "grumpy old man" and accepted such disputes as part of his personality. Walters and the rest of the housing unit, including Mendez, generally coexisted without incident. Matthews, 36 F. Supp. 2d at 126 (granting defendants' motion for summary judgment in part because the inmates' peaceful

8

coexistence failed to demonstrate a zone of risk). Viewing the facts in the light most favorable to Walters, two complaints of an inmate entering a cube made to two different officers lacking a temporal proximity to the incident at issue does not represent the longstanding, pervasive, well-documented zone of risk contemplated by the courts.

Second, the record fails to show that defendants were subjectively indifferent. Defendants contend, and the record fails to refute, that they had no knowledge of any threat of violence or imminent harm which was to befall Walters. No one saw instances of threatening or violent behavior. No reports were made by Walters that he was in danger. No one saw the altercation occur and only witnessed the subsequent injuries. Walters claims that Hanna should have been patrolling the bathroom areas in accordance with facility policy if they were unobservable from his post. However, there is still nothing in the record to indicate that Hanna should have determined the bathroom area to represent a risk to Walters or that Walters was in danger of being assaulted if he entered it.

Neither Walters complaining to Gardner about whether Mendez was allowed to enter his cube, as he had done without permission, nor the admonishment from Hanna, show indifference by the defendants. Walters contends that these verbal disputes with Mendez should have indicated to defendants that there was something more going on. Dkt. No. 47 at 3. However, it is unreasonable to assume that either defendant would have read so deeply into these situations to infer that a serous threat was lurking. There was a lack of awareness on the part of defendants. To the extent that defendants should have asked further questions or done more investigation after hearing Walters yell at another inmate, such oversights were at worst negligent, which will not sustain an Eighth Amendment claim. See Farmer, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he

should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment."); Matthews, 36 F. Supp. 2d at 126 ("Additional precautions might have prevented the stabbing here, but the failure to institute such precautions at most constituted negligence.").

Accordingly, defendants' motion on this ground should be granted.

### C. Qualified Immunity

Finally, defendants claim that even if Walters' constitutional claims are substantiated, they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified or good faith immunity might still be available as a bar to a plaintiff's suit if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights of which a reasonable person would have known were clearly established at the time

of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached concerning Walters' claims because, for the reasons discussed above, he has failed to raise a question of fact as to the first prong of the inquiry.

Accordingly, in the alternative, defendants' motion should be granted on this ground as well.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 45) be **GRANTED** as to all claims and all defendants. Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)).  FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  February 15, 2012
       Albany, New York

_____
David R. Homer
U.S. Magistrate Judge